UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

```
NELSON POSADA,                    )   No. CV 03-08803 (CW)
                                  )
              Plaintiff,          )   DECISION AND ORDER
       v.                         )
                                  )
JO ANNE B. BARNHART,              )
Commissioner, Social Security     )
Administration,                   )
                                  )
              Defendant.          )
_____)
```

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned Magistrate Judge.  Plaintiff seeks review of the Commissioner's denial of disability benefits.  As discussed below, the court finds that the Commissioner's decision should be reversed and this matter remanded for further proceedings.

### I.  BACKGROUND

Plaintiff Nelson Posada was born on June 27, 1953, and was forty-nine years old at the time of his administrative hearing. [Administrative Record, "AR," 28, 30.]  He has a sixth grade education in El Salvador and past relevant work experience as a packer and

deliveryman. [AR 14, 30.]  He claims disability on the basis of diabetes mellitus, hypertension and status post (head) trauma with cerebral contusions. [Joint Stipulation, "JS," 3.]

## II.  PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on December 3, 2003, and filed on December 5, 2003.  On April 8, 2004, defendant filed plaintiff's Administrative Record ("AR").  On August 30, 2004, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party.  This matter has been taken under submission without oral argument.

## III.  PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income (SSI) on December 5, 2001, alleging disability since November 20, 2000. [JS 1.]  An administrative hearing was held on July 7, 2003, and a supplemental hearing was held on September 17, 2003, each before Administrative Law Judge ("ALJ") London Steverson.  [Transcript, AR 26, 35.]  Plaintiff appeared with counsel, and testimony was taken from plaintiff and vocational expert Freeman Leif. [Id.]  The ALJ denied benefits on October 7, 2003. [Decision, AR 17.]  When the Appeals Council denied review on November 16, 2003, the ALJ's decision became the Commissioner's final decision. [AR 5.]

## IV.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence.  However, if the

court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

**V.   DISCUSSION**

**A.   THE FIVE-STEP EVALUATION**

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

      Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
      Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
      Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
      Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
      Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

    Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288.  If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  Penny v.

education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

### B. THE ALJ'S EVALUATION IN PLAINTIFF'S CASE

In plaintiff's case, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 20, 2000 (step one), that plaintiff had "severe" impairments, namely diabetes mellitus, hypertension, a history of alcohol and drug abuse, and status-post head trauma with cerebral contusions (step two), and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 14.] The ALJ found that plaintiff had the RFC to perform his past work as a deliveryman (step four). [AR 16.] Thus, the ALJ concluded that plaintiff was not under a "disability" as defined by the Social Security Act. [Id.]

### C. PLAINTIFF'S PRESENT CLAIMS

Plaintiff makes multiple claims to challenge the ALJ's decision, including that the ALJ improperly discounted plaintiff's credibility and failed to develop the record regarding plaintiff's memory impairment. [JS 10, 22.] As discussed below, these claims have merit and warrant reversal of the Commissioner's decision and remand for further proceedings.

### D. THE ALJ'S REJECTION OF PLAINTIFF'S CREDIBILITY

Although an ALJ is responsible for determining a claimant's credibility, an ALJ may not reject a claimant's testimony without providing "clear and convincing reasons." Holohan v. Massanari, 246

---

Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

F.3d 1195, 1208 (9th Cir. 2001).  An ALJ must "specifically identify" the testimony found not credible and "explain what evidence undermines the testimony," and the evidence on which the ALJ relies must be "substantial."  Holohan, 246 F.3d at 1208; see also Tonapetyan, 242 F.3d at 1148 ("The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements."); Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (quoting Rollins v. Massanari, 261 F.3d 853, 856-857 (9th Cir. 2001)).

Here, plaintiff testified that as a result of his head trauma, he could not perform his past work as a deliveryman because "I forget everything." [AR 31.]  For example, "I'm doing something [such as a chore] and then I just stop doing it." [Id.]  His memory problem impacted his driving because "I don't arrive," "I don't find the address," and when he would go somewhere, "I don't come back." [AR 32.]  Plaintiff also testified that the medications he was taking made him too sleepy to drive. [Id.]

The ALJ found plaintiff "not to be a credible witness." [AR 15.] Specifically, the ALJ rejected plaintiff's claim that his anti-convulsant medications caused side effects such as drowsiness and sleepiness because plaintiff's "treatment record does not reflect medication side effects which adversely affect the claimant's ability to function." [AR 14, 15.]  The ALJ also noted that plaintiff's treatment records showed that plaintiff has been "seizure free during

the prophylactic prescription of anti-convulsant medication" and that his prescription for Dilantin (an anti-convulsant medication) was not refilled. [Id.]

These reasons were not sufficiently "clear and convincing" to support the ALJ's rejection of plaintiff's testimony regarding his medication side effects and memory problems. The record does not show that plaintiff specifically designated his anti-convulsant medications as causing his side effects, not does it show that he claimed to have experienced seizures. There is evidence, however, that plaintiff was taking medications for other impairments that could have caused the side effects he claims to have suffered. On June 13, 2003, one month before he gave testimony at the administrative hearing, plaintiff was prescribed Benazepril, which is known to cause drowsiness,[2] for his high blood pressure. [AR 187.] Plaintiff does not specifically identify this medication as causing his side effects (because he does not remember taking them), but the record shows that most of the medications he was taking at the time of the administrative hearing were prescribed on June 13, 2003, shortly before the hearing.[3] [Id.] The record does not indicate that plaintiff saw his treating doctor after June 13, 2003. Thus, the ALJ's rejection of plaintiff's testimony, based on an absence of documented side effects in the treatment records, is unreasonable because the plaintiff did not have

---

[2] Physician's Desk Reference, p. 1870 (52nd ed., 1998).

[3] More than two years earlier, in March 2001, plaintiff was prescribed Glyburide for his diabetes, but it is unclear whether plaintiff stopped using this medication because the record shows that he was taking no medications in January 2002. [AR 161, 187.] In addition, Glyburide is not known to cause drowsiness. Physician's Desk Reference, pp. 1217, 2273, 2280 (52nd ed., 1998).

an opportunity to complain of his side effects to a treating doctor. Because the ALJ improperly discounted the possibility that plaintiff suffered from the side effects described by his testimony, the ALJ's credibility determination was erroneous. Holohan, 246 F.3d at 1208.

Even if plaintiff's testimony were credited as true, however, it is not clear that plaintiff must be found disabled. Plaintiff testified that his memory problems and drowsiness precluded him from driving, a requirement of his past relevant work as a deliveryman. [AR 32.] He stated that "I forget everything" but later clarified that his memory problems cause him to fail to return home "[m]aybe twice a week." Plaintiff's attorney later posed questions to VE Leif purporting to reflect the limitations described in plaintiff's testimony. Plaintiff's attorney asked the VE whether a person "who frequently forgets things, which would be 2/3 of the time"[4] could perform plaintiff's past relevant work. [AR 43.] The VE replied that such a person could not perform plaintiff's past relevant work or any other work. [AR 44.]

The hypothetical question posed by plaintiff's attorney to the VE, which included a memory loss of "2/3 of the time," possibly overstated the limitations described by plaintiff's testimony. Plaintiff testified that he forgets to return home "[m]aybe twice a week," which is less than two-thirds of the week. Plaintiff's statement that he "forgets everything," as well as his other statements regarding his memory problems, are insufficiently precise to quantify or determine the severity of his memory impairment.

---

[4] Earlier, the ALJ agreed that a person who forgets things two-thirds of the time would have a "marked" limitation in memory. [AR 42.]

8

1. Accordingly, remand for further proceedings is required to develop the record thoroughly. See <u>Varney v. Sec. Of Health and Human Servs.</u>, 859 F.2d 1396, 1399 (9th Cir. 1988)(citing <u>Gamer v. Sec. of Health and Human Servs.</u> 815 F.2d 1275, 1279 (9th Cir. 1986))(remand for further proceedings is appropriate when hypothetical question posed to VE did not accurately reflect plaintiff's limitations).

**E.   THE ALJ'S DUTY TO INQUIRE ABOUT PLAINTIFF'S MEMORY PROBLEMS**

An ALJ has an affirmative duty to develop the record, even if the claimant is represented by counsel. See <u>Armstrong v. Commissioner of Social Security Administration</u>, 160 F.3d 587, 589 (9th Cir. 1998); <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1993). This includes, inter alia, the duty to compile all of the relevant facts upon which an ultimate adjudication of disability ultimately rests. See <u>Miles v. Chater</u>, 84 F.3d 1397, 1401 (2d Cir. 1996)(The ALJ is required to develop a full and fair record, giving individualized consideration to each claim).

Upon remand, it may be necessary to develop the medical record further because the existing medical evidence, not just plaintiff's testimony, leaves unanswered questions about plaintiff's memory problems. Dr. Richard Graham treated plaintiff from November 2000 (when plaintiff injured his head during a physical assault) to April 2001. [AR 98, 148.] On November 22, 2000, Dr. Graham remarked that plaintiff has "[p]oor short-term, long-term recall." [AR 97.] One week later, on November 29, 2000, Dr. Graham found plaintiff had a "[p]ersistent cognitive and memory dysfunction however improving slightly." [AR 154.] Two months later, on January 17, 2001, Dr. Graham found plaintiff improved enough to "return to light duty work" but that plaintiff would have to "inquire as to [the] availability of

vocational training" and that he would engage in "[n]o driving." [AR 152.]  Three months later, on April 11, 2001, Dr. Graham noted that plaintiff was "[d]oing very well," but "[had] some minimal to mild residual cognitive dysfunction." [AR 148.]  Plaintiff also performed his Serial 7's poorly but otherwise, "his memory [was] generally unremarkable." [Id.]  On the other hand, Dr. Graham opined that plaintiff would need vocational retraining and a "DMV evaluation...to ascertain his driving capacity." [Id.]  Although Dr. Graham's treatment notes indicate that plaintiff's cognitive and memory problems were improving over time, they also leave open the question of whether plaintiff has a lingering memory impairment that could affect his ability to drive (and, thus, perform his past relevant work as a deliveryman).[5]

In addition, plaintiff's attorney suggested during the administrative hearing that, "We have here a memory loss which is not really quantified...it may be advisable to have a neuropsychological examination performed to quantify the deficits as a result of the encephalopathy." [AR 29.]  The record does not show that such an examination was performed.  Given that Dr. Graham's treatment notes also suggest that plaintiff could have a persistent memory problem, it may be advisable to have an examination administered.

**F.   REMAND FOR FURTHER PROCEEDINGS**

The decision whether to remand for further proceedings is within

---

[5] On February 15, 2001, Dr. Jan King, Dr. Graham's colleague, noted that plaintiff "has poor memory." [AR 150.]  Plaintiff argues that this establishes that his mental capacity precludes him from performing his past relevant work. [JS 12, 21.]  Dr. King's statement, however, is written under a heading called "S," suggesting that she was merely recording plaintiff's subjective complaints about his memory. [AR 150.]  Accordingly, further development of the record is required for objective evidence of plaintiff's memory capacity.

the discretion of the district court. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-1178 (9th Cir. 2000). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. <u>Harman</u>, 211 F.3d at 1179 (decision whether to remand for further proceedings turns upon their likely utility). However, where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. <u>Id</u>.

Here, there are outstanding issues that remain to be resolved. Further development of the record regarding plaintiff's memory problems is necessary to determine whether he is capable of performing his past relevant work or make a vocational adjustment to other work that is available in significant numbers. Thus, the case is remanded for further proceedings.

### **VI.  ORDERS**

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **REVERSED**.

2. This action is **REMANDED** to defendant, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings as discussed above.

3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: November 29, 2005

                                        ___/s/_____
                                           CARLA M. WOEHRLE
                                   United States Magistrate Judge